UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 7 |
| TIMOTHY BROWN ALTHER, and ) | |
| AMY LEIGH ALTHER, ) | |
| ) | Case Number 14-62429 |
| Debtors. ) | |
| ) | |
| JUDY A. ROBBINS, ) | |
| United States Trustee For Region Four, ) | |
| ) | |
| Movant, ) | |
| ) | |
| *v.* ) | |
| ) | |
| ) | |
| TIMOTHY BROWN ALTHER, and ) | |
| AMY LEIGH ALTHER, ) | |
| ) | |
| Respondents. ) | |

**MOTION TO DISMISS CASE FOR ABUSE**

Judy A. Robbins, United States Trustee for Region Four (the "United States Trustee"), by counsel, moves for the entry of an order dismissing the above-referenced Debtors' case pursuant to § 707(b)(1) of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"). In support of this motion, the United States Trustee respectfully states as follows:

JURISDICTION AND VENUE

1.    Jurisdiction is proper pursuant to 28 U.S.C. §§ 157 and 1334. The statutory predicates for this motion are §§ 105(a) and 707(b)(1), (2), and (3) of the Bankruptcy Code.

2.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

1

BACKGROUND

4.      The Debtors are individuals and they filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on December 19, 2014.  The petition indicates that the debts are primarily consumer debts.  The petition, schedules, and statements filed by the Debtors pursuant to § 521 of the Bankruptcy Code are incorporated by reference.

5.      The first date set for the meeting of creditors was January 16, 2015.

6.      The United States Trustee timely filed a statement of presumed abuse, and this motion is timely filed.

7.      According to Schedule I, the male Debtor is employed by Union First Market Bank.  The female Debtor is not employed.

8.      The Debtors claimed two children as dependents on Schedule J and asserted a household size of 4 on their means test.

9.      The Debtors reported an above-median income on the means test and that the presumption of abuse arises in the case.  According to the means test, the applicable median income is $92,277.00 and the Debtors' combined current monthly income is $182,154.48.

10.     The Debtors correctly reported that the presumption of abuse arises in the case.

11.     The Debtors claimed a deduction of $488.00 on line 22A of the means test (vehicle operation expenses).

12.     The Debtors may be entitled to deduct $688.00 on line 22A of the means test.

13.     The Debtors claimed a deduction of $3,694.38 on line 25 of the means test (taxes).

14. According to the Debtors' 2013 income tax returns, they overpaid $4,338.00 in state and federal income taxes. After an opportunity for discovery, it is believed that the Debtors' 2014 income tax returns will show the Debtors overpaid income taxes.

15. Line 25 must be adjusted to account for the over-withholding of taxes. The Debtors should have reported approximately $3,332.88 on line 25 of the means test.[1]

16. The Debtors claimed a $72.00 deduction on line 35 of the means test (pay for the reasonable and necessary care and support of an elderly, chronically ill, or disabled household or immediate family member).

17. No expense listed on Schedule J or otherwise supports the deduction claimed on line 35 of the means test.

18. The Debtors claimed deductions totaling $5,119.71 on line 42 of the means test (secured debt repayments), of which $351.52 claimed on line 42b of the means test is for a 401(k) loan repayment.

19. Upon information and belief, the male Debtor's retirement plan contributions and loan repayments are voluntary.

20. Retirement plan loans are not secured debts.

21. The Debtors are entitled to claim no more than $4,768.19 on line 42 of the means test.

22. The Debtors claimed a $61.69 deduction on line 45 of the means test (chapter 13 administrative expenses).

---

[1] Calculated as follows: $4,338.00 (2013 refunds) divided by 12 months = $361.50. Deduction claimed of $3,694.38 minus $361.50 = $3,332.88. The IRS provides a calculator on its website that the male Debtor could use to adjust his allowances to correct for the over-withholding of taxes.

23. The Debtors should have claimed a deduction of approximately $94.12 on line 45 of the means test.

24. The Debtors should have (i) a claimed deductions totaling no more than $13,745.21 on line 49 of the means test and (ii) disclosed monthly disposable income of at least $1,434.33 on line 50 of the means test.[2]

25. The Debtors asserted additional expense claims totaling $2,251.59 on line 56 of the means test.

26. The instructions for line 56 of the means test indicate that line 56 provides a space for debtors to assert alleged monthly expenses "required for the health and welfare of you and your family and that you contend should be an additional deduction from your current monthly income under § 707(b)(2)(A)(ii)(I)."

27. The male Debtor's 401(k) contributions are not necessary for the health and welfare of the Debtors or their dependents.

28. Retirement contributions are not allowable under § 707(b)(2)(A)(ii)(I) and retirement contributions are not special circumstances within the meaning of 11 U.S.C. § 707(b)(2)(B).

29. The deduction claimed on line 56a is not allowable.

30. The deduction claimed on line 56b is already accounted for in line 22A of the means test (see paragraph 12 above).

31. On the continuation sheet related to line 56c, the Debtors asserted $504.48 for "Income reduction effective 01/01/15. . . ."

---

[2] But see the discussion in paragraph 36 below.

32. The male Debtor's pay advices for January 15, 2015, January 30, 2015, and February 15, 2015, reflect that the Debtor received a small pay raise in 2015 (from $7,589.77 per pay period to $7,629.68) and fail to reflect any alleged $504.58 loss of income or loss of HSA reimbursement.

33. The Debtors do not have any out of pocket medical expenses according to Schedule J. The HSA contributions the male Debtor made in 2014 ($337.92) per month were, on information and belief, sufficient to pay the Debtors' health care costs.

34. It appears the male Debtor increased his voluntary HSA contributions for 2015 to the maximum contribution limit for 2015 ($6,650.00 for a family).

35. HSA contributions in excess of the amount necessary to pay for the Debtors' health care costs are not reasonable or necessary or allowable. Excess contributions are effectively additional retirement contributions to the extent that at age 65 the contributions and earnings thereon may be withdrawn at any time subject only to income tax (e.g. like withdrawals from a traditional IRA).

36. To the extent the Debtors are entitled to any deduction on line 56, such deduction does not exceed $348.37. Arguably, the allowable amount on line 56 may be $0.00 and the allowable amounts on line 34 may be $1,660.62[3] and line 27 may be $177.62[4]. In any event, the Debtors' monthly disposable exceeds $1,000.00 regardless of whether the insurance premium increases are deductible on the means test (whether on line 27, 34, or 56).

37. The Debtors claimed unreasonable and/or excessive expenses of Schedule J including, but not limited to, those on lines 4, 4c, 4d, 6a, 6c, 12, 13, and 17c.

---

[3] Calculated as follows - 2015 medical and dental insurance premiums reflected on pay advices ($1,322.70) plus $337.92 (HSA contributions sufficient to pay medical expenses).
[4] This is the total of the supplemental and term life insurance premiums reflected on the 2015 pay advices.

38. The expenses claimed on lines 4, 4c, and 4d of Schedule J total $4,349.48.[5]

39. The Local Standard for housing for a household size of 4 is $1,814.00.

40. When the Debtors moved to Virginia from Florida in 2012, they rented a house for approximately $2,500.00 per month. After they moved out of that rental house in April 2013 and prior moving into the new house the Debtors built and currently live in, they rented 400 Ruskin Drive, #203, Charlottesville, Virginia for approximately $1,200.00 a month.

41. At the time the Debtors built their house and incurred the debt secured by their house, they owed a substantial amount on credit cards.[6]

42. The Local Standard for all utilities is $565.00.

43. The utility expenses claimed on line 6a would be less if the Debtors lived in more reasonable accommodations.

44. Upon information and belief, the Debtors actually only pay approximately $363.97 for the utilities listed on line 6c of Schedule J.

45. The National Standard for food and housekeeping supplies is $868.00.

46. The male Debtor commutes approximately 24 miles round-trip for work and the female Debtor is not employed.

47. After an opportunity for discovery, it is believed the evidence will show the Debtors actual transportation expenses are less than $500.00 a month.

48. Upon information and belief, the Debtors are not paying the expense listed on line 17c of Schedule J. In any event, such payment for an unsecured debt should be disallowed.

---

[5] According to the Debtors' Schedule J, they cannot afford their residence as their reported net monthly income is <$1,047.10>.
[6] The Debtors should have also been aware of the 2012 tax debt owed as a result of a retirement account distribution.

49.   According to the male Debtor's 2015 payment advices, he receives an average of $8,372.93 per month from his employer after all payroll deductions.

50.   The following average monthly payroll deductions are not reasonable or necessary for the support and maintenance of the Debtors and their dependents: $704.68 in 401(k) contributions; $456.50 in 401(k) loan repayments; and, the additional $212.08 in HSA contributions the male Debtor elected to be withheld in 2015.

51.   If Schedules I and J are modified to remove excessive or unreasonable deductions and expenses, the Debtors would report net monthly income in excess of $2,500.00 on Schedule J.

52.   The Debtors did not attempt to modify their lifestyle to repay their creditors prior to filing this case.

53.   The Debtors have a steady source of income.

54.   The Debtors did not file this case as a result of any sudden illness or loss of income that rendered them unable to pay their debts. Rather, it appears they incurred excessive consumer debts living beyond their substantial means.

55.   The Debtors reported $60,381.24 on Schedule E and $131,509.00 on Schedule F.

### BASIS FOR RELIEF

A.   *Granting The Debtors A Discharge Is Presumptively Abusive Under § 707(b)(2) Of The Bankruptcy Code.*

56.   In considering whether the granting of a discharge would be an abuse of the provisions of chapter 7 of the Bankruptcy Code, the Court:

> shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of—
> (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,000, whichever is greater; or

        (II) $10,000.

11 U.S.C. § 707(b)(2)(A)(i).  Clauses (ii), (iii), and (iv) of § 707(b)(2)(A) set forth the allowable deductions that may be taken on the means test.  11 U.S.C. § 707(b)(2).

    57.    The granting of a chapter 7 discharge to the Debtors is presumptively abusive under § 707(b)(2) of the Bankruptcy Code.

    58.    Because of the presumption of abuse arises, the Debtors' case should be dismissed unless they rebuts the presumption of abuse in accordance with 11 U.S.C. § 707(b)(2)(B).

    B.    *Even If No Presumption Of Abuse Arose, Granting The Debtors A Discharge Would Be An Abuse Of Chapter 7 Of The Bankruptcy Code Pursuant to 11 U.S.C. § 707(b)(3).*

    59.    Section 707(b)(3) of the Bankruptcy Code states:

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider—
>
> > (A) whether the debtor filed the petition in bad faith; or
> > (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

    60.    The totality of the circumstances of the Debtors' financial situation demonstrates that it would be an abuse of the provisions of chapter 7 of the Bankruptcy Code for the Debtors to receive a chapter 7 discharge.  By way of example and not limitation, it appears the Debtors: (i) have the ability to make substantial payments to their creditors whether inside or outside of bankruptcy; (ii) have claimed certain excessive and/or unreasonable deduction and expenses on their budget; (iii) have stable sources of income; (iv) did not file this case because of any unexpected loss of income that rendered them unable to pay their creditors; and (v) expect their

8

unsecured creditors to shoulder the cost of their excessive consumer spending while they continue to make large retirement plan contributions, retirement loan payments to themselves, and excessive HSA contributions. Viewed under the totality of the circumstances of the Debtors' financial situation, the Court should dismiss this abusive case.

WHEREFORE, the United States Trustee, by counsel, respectfully requests the entry of an order dismissing the Debtors' case pursuant to § 707(b)(1) of the Bankruptcy Code.

Date:  February 25, 2015    Respectfully submitted,

United States Trustee

By: /s/ W. Joel Charboneau
Trial Attorney for the United States Trustee

### **NOTICE OF HEARING**

PLEASE TAKE NOTICE that the United States Trustee has filed a *Motion To Dismiss Case For Abuse* (the "Motion"). A **preliminary hearing** on the Motion will be held on **March 16, 2015, at 2:00 p.m.** in the United States Bankruptcy Court, 255 W. Main Street, Charlottesville, Virginia.

Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)

### CERTIFICATE OF SERVICE

I certify that on February 25, 2015, I caused the foregoing to be electronically filed with the United States Bankruptcy Court for the Western District of Virginia which caused electronic notifications of filing to be served on all registered users of the CM/ECF System that have appeared in this case. On this same date, I caused a copy to be mailed by first class mail to:

Timothy B. Alther                     Amy Leigh Alther
2738 Proffit Crossing Lane            2738 Proffitt Crossing Lane
Charlottesville, Virginia 22911       Charlottesville, Virginia 22911

/s/ W. Joel Charboneau

W. Joel Charboneau (VSB #68025)
210 First Street, Suite 505
Roanoke, Virginia 24011
540-857-2699
joel.charboneau@usdoj.gov