**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF VIRGINIA**
**LYNCHBURG DIVISION**

| | |
|---|---|
| IN RE: | |
| | **Chapter 7** |
| **TIMOTHY BROWN ALTHER and** | |
| **AMY LEIGH ALTHER,** | |
| | **Case Number 14-62429** |
|     Debtors. | |
| | |
| **JUDY A. ROBBINS,** | |
| United States Trustee for Region Four, | |
| | |
|     Movant, | |
| | |
| v. | **ECF Doc. No. 13** |
| | |
| **TIMOTHY BROWN ALTHER and** | |
| **AMY LEIGH ALTHER,** | |
| | |
|     Respondents. | |

**MEMORANDUM OPINION**

This case concerns "special circumstance" deductions under 11 U.S.C. § 707(b)(2)(B). The United States Trustee moves to dismiss this chapter 7 case as presumptively abusive according to 11 U.S.C. § 707(b)(2). As an alternative, the United States Trustee asserts that the debtors' ability to pay along with the totality of the circumstances render the issuance of a chapter 7 discharge to these debtors an abuse according to 11 U.S.C. § 707(b)(3)(B). For the reasons set forth below, the Court concludes that issuance of a chapter 7 discharge to Mr. and Mrs. Alther is presumptively abusive under Bankruptcy Code section 707(b)(2) and that Mr. and Mrs. Alther have not rebutted the presumption. They failed to prove special circumstances. Consequently, the Court grants the United States Trustee's motion. Because the Court concludes that the United States Trustee's motion should be granted under section 707(b)(2), the Court

1

need not address the United States Trustee's alternate request to dismiss under section 707(b)(3)(B).

## FINDINGS OF FACT

The facts are largely uncontested. Mr. and Mrs. Alther filed their voluntary chapter 7 petition on December 19, 2014, asserting that they are individual debtors whose debts are primarily consumer debts. Pet. at 1. The Althers owe the Internal Revenue Service a federal tax debt in the approximate amount of $41,000 for 2012 income taxes, partially arising from early distribution from a 401(k) plan. *See* Schedule E; Tr. at 36:14–20; 59:20–60:11. Mr. and Mrs. Alther learned of this tax liability in June 2014. Tr. at 59:20–60:11. The Althers owe $131,509 in non-priority, unsecured debt, all of which is scheduled as credit card debt. Schedule F. The Althers incurred nearly all of this credit card debt after September 2013 (within 18 months of filing chapter 7), including some credit card debt within a few months of filing chapter 7. Tr. at 16:12–21:23; 25:9–15; Ex. 14. The Althers owe $797,878.12 in secured debt of which $745,488 is for their residence that they purchased in September 2013. *See* Schedule D; Tr. at 17:9–13. The Althers used credit cards and the distribution from Mr. Alther's retirement account for the down payment and other expenses related to purchasing the house. Tr. at 15:10–16:11.

Mr. Alther is a bank executive, and Mrs. Alther is not employed. Schedule I; Tr. at 8:9–12. The couple have two children, ages 9 and 12. Schedule J. The debtors' annualized current monthly income is $182,154.48, as reported on line 13 of the Chapter 7 Statement of Current Monthly Income and Means-Test Calculation. The applicable median family income as of the petition date for a family of four in Virginia is $91,859. *See Means Testing*, Dep't of Justice, http://www.justice.gov/ust/means-testing/means-testing-cases-filed-between-november-1-2014-and-march-31-2015-inclusive. According to their petition, the debtors' income is 198% of the

applicable median and thus exceeds the median family income for a household of four in Virginia.

The debtors completed the Chapter 7 Statement of Current Monthly Income and Means-Test Calculation on Official Form 22A. On line 51 of that form, the debtors reported that their "60-month disposable income under § 707(b)(2)" is $53,239.80. Because this amount exceeds $12,475, the presumption of abuse arose and the debtors checked the appropriate box at the top of page one and on line 52.

On line 56, the debtors listed additional expense claims[1] for monthly 401(k) contributions of $986.56 and a monthly "clunker" expense of $200. The debtors also listed increased monthly payments, effective as of January 1, 2015, of $51.73 for disability insurance, $250.70 for health insurance, $212.08 for a health savings account, $45.94 for life insurance premium, as well as a reduction of monthly income of $504.58 due to a loss of a health savings account reimbursement. These additional expense claims amount to an extra $2,251.59 per month, and when multiplied by 60 yields $135,095.40. According to these calculations, the sixty-month disposable income listed in line 51 becomes negative. The debtors assert that based on these adjustments, the presumption of undue hardship is rebutted.

The United States Trustee filed a statement that the case was presumed abusive on January 26, 2015, and subsequently filed the motion to dismiss on February 25, 2015. *See* 11 U.S.C. § 704(b). In her motion to dismiss, the United States Trustee challenges the debtors' deductions for voluntary 401(k) contributions, tax expenses, and contributions for the care of household or family members. Mot. to Dismiss ¶¶ 13–20. On the other hand, the United States Trustee notes that the debtors may be entitled to an increased amount of deduction on certain

---

[1] Line 56 instructs the preparer to "[l]ist and describe any monthly expenses, not otherwise stated in this form, that are required for the health and welfare of you and your family and that you contend should be an additional deduction from your current monthly income under § 707(b)(2)(A)(ii)(I)."

3

payments, including vehicle operation expenses and chapter 13 administrative expenses. *Id.* ¶¶ 11–12, 23. Based on her adjustments, the United States Trustee asserts that the allowed deductions should total $13,745.21 on line 49 and that the monthly disposable income should total $1,434.33 on line 50. *Id.* ¶ 24. Next, the United States Trustee challenges the additional expense claims on line 56, specifically the 401(k) contributions, the health savings account contributions, and an alleged income reduction. *Id.* ¶ 25–36. According to the United States Trustee, the disposable income revealed on line 50 should not be reduced by any of these purported amounts because they are either not permissible additional expense deductions or are overstated. *See id.* To the extent any additional expense deductions may be allowed, the United States Trustee asserts such additional expense deductions do not exceed $348.37.[2] *Id.* ¶ 36. Either way, the bottom line monthly disposable income renders relief under chapter 7 for Mr. and Mrs. Alther an abuse. *See id.*

Mr. and Mrs. Alther argue that the presumption of abuse is rebutted if the Court considers deductions that would be permissible in a chapter 13 calculation. *See* Resp. to Mot. to Dismiss ¶ 29; Tr. at 111:11–112:13. Furthermore, the Althers argue that the case should not be dismissed as an abuse because, according to their calculations, if they filed chapter 13, the calculation of disposable income would be negative and they would not be required to pay any amount to non-priority, unsecured creditors under a chapter 13 plan. Tr. at 108:4–13; 112:14–22.

The Court held a hearing on July 20, 2015. At the hearing, Mr. Alther testified and provided to the Court a narrative of the debtors' financial history, provided details regarding his income and his expenses, and explained the nature of his debts. Tr. at 7:14–66:15. In addition, Mrs. Alther testified about her employment prospects. Tr. at 67:1–69:6. Finally, an employee

---

[2]     This number comprises the life insurance premium increase, the disability insurance increase, and the health insurance increase asserted on line 56.

with the United States Trustee's office testified regarding analysis of the debtors' bank statements and a description of the debtors' post-petition activity and conduct. Tr. at 69:11–90:1.

The United States Trustee asks this Court to grant her motion to dismiss the case for abuse because the presumption of abuse arises under Bankruptcy Code section 707(b)(2) and has not been sufficiently rebutted. *See* Tr. at 91:1–8 (arguing that the presumption has arisen and no special circumstances have been shown).

## JURISDICTION

Mr. and Mrs. Alther are debtors in this Court. The Court has subject matter jurisdiction under 28 U.S.C. §§ 1334(a) and authority to hear the case under 28 U.S.C. § 157(a), with the delegation made to this Court by Order of Reference from the District Court entered on December 6, 1994, and Rule 3 of the Local Rules of the United States District Court for the Western District of Virginia. The question the Court must answer is whether a chapter 7 discharge issued to Mr. and Mrs. Alther would be an abuse of the Bankruptcy Code. This matter is a "core" bankruptcy proceeding under 28 U.S.C. § 157(b)(2)(A).

## CONCLUSIONS OF LAW

A chapter 7 discharge is presumptively abusive if debtors, whose income exceeds the applicable median family income, report that their disposable income, as calculated under the means test, exceeds certain statutory thresholds. 11 U.S.C. § 707(b)(2)(A)(i), (b)(6); *see Williams v. McDow (In re Williams)*, Civ. No. 5:10CV00049, 2010 WL 3292812, at *1 (W.D. Va. Aug. 19, 2010).

Section 707(b) of the Bankruptcy Code provides, in relevant part, that

> (1) After notice and a hearing, the court . . . on a motion by the United States trustee . . . may dismiss a case filed by an individual debtor under this

> chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter.
> 
> (2)(A)(i) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of—
> 
> (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $7,475, whichever is greater; or
> (II) $12,475.

11 U.S.C. § 707(b)(1)–(2)(A)(i). The Code permits a debtor to rebut the presumption of abuse by demonstrating special circumstances:

> (2)(B)(i)In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.
> ….
> (iv)The presumption of abuse may only be rebutted if the additional expenses or adjustments to income referred to in clause (i) cause the product of the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv) of subparagraph (A) when multiplied by 60 to be less than the lesser of—
> 
> (I) 25 percent of the debtor's nonpriority unsecured claims, or $7,475, whichever is greater; or
> (II) $12,475.

*Id*. § 707(b)(2)(B)(i), (iv). To rebut the presumption of abuse, therefore, debtors must demonstrate not simply special circumstances but special circumstances which result in an adjustment to the current monthly income calculation so that, taking into account the special circumstances adjustment, the debtors' net income does not exceed the statutory thresholds which gave rise to the initial presumption of abuse.

The Bankruptcy Code does not provide a definition of "special circumstances." Section 707(b)(2) provides two examples: "a serious medical condition" and "a call or order to active

6

duty in the Armed Forces." 11 U.S.C. § 707(b)(2)(B)(i). These examples "are instructive of the kinds of 'special circumstances' that would justify deviations from Form B22C." *In re Hanks*, 362 B.R. 494, 502 (Bankr. D. Utah 2007). Not surprisingly, each is unusual and exceptional, as the word "special" connotes. One court observed of the statutory examples, "the similarity in nature of the two examples is that they are life circumstances that directly and unavoidably affect one's earning capacity or give rise to necessary, additional expenses." *In re Smith*, 388 B.R. 885, 888 (Bankr. C.D. Ill. 2008); *see also In re Burdett*, No. 12-12066-BFK, 2013 WL 865575, at *3–5 (Bankr. E.D. Va. Mar. 7, 2013) ("Including the two special circumstances examples, however, signals an intent that the circumstances be of a more severe nature than ordinary job changes or income fluctuations."). Some courts focus on the juxtaposition of "special" with other terms in the Code such as "undue hardship" to conclude that "special circumstances" implies a bar that is not high or extraordinary; otherwise it could not be truly rebuttable. *See In re Hammock*, 436 B.R. 343, 354–55 (Bankr. E.D.N.C. 2010) (describing split within case law defining "special circumstances"). Even if not "extraordinary," courts agree that the circumstances must be necessary. *In re Hammock*, 436 B.R. 343, 354–55 (Bankr. E.D.N.C. 2010) (citing *DeAngelis v. Fonash (In re Fonash)*, 401 B.R. 143, 146 (Bankr. M.D. Pa. 2008); *In re Haman*, 366 B.R. 307, 313 (Bankr. D. Del. 2007); *In re Crego*, 387 B.R. 225, 228 (Bankr. E.D. Wis. 2008)).

This Court concludes that to rebut the presumption of abuse under section 707(b)(2), a debtor must demonstrate "special circumstances" which, as the name implies, are "special." The circumstances must be unusual, yet necessary.

A. The Debtors' Case Is Presumptively Abusive

Mr. and Mrs. Alter are individuals whose debts are primarily consumer debts and whose current monthly income less the applicable deductions multiplied by 60 exceeds $12,475. The

7

presumption of abuse thus arises. The debtors admit by their own calculations that this presumption of abuse arises. The debtors insist that the presumption is rebutted by special circumstances. These special circumstances are expenses that according to the debtors would be appropriate deductions in a chapter 13 case. Hence, the debtors argue, they should not be forbidden from claiming these deductions simply because they are proceeding under chapter 7. What is more, the debtors point out their disposable income in chapter 13 would be negative. It would seem to be pointless to deny the debtors a chapter 7 discharge without repayment of their unsecured debt, when they could receive a chapter 13 discharge without repayment of their unsecured debt. This Court disagrees.

Although the Court is satisfied that there is a presumption of abuse in this case, it is necessary initially to determine the appropriate current monthly income amount that should have been reported on line 50 of Official Form 22A before the Court can determine whether the presumption has been rebutted. For this purpose, based on the arguments made by the parties both at hearing and on the record, the Court will adjust certain amounts claimed as deductions from the current monthly income of the debtors. The Court will start with the monthly disposable income as reported by the debtors on line 50 of $887.33.

1. *401(k) Loan Repayment*

The United States Trustee asserts that the 401(k) loan repayment to Prudential Retirement is voluntary and unsecured and thus that the $351.52 monthly deduction should be added back to the debtors' income. *See* Mot. to Dismiss ¶¶ 18–21. The debtors deny that the debt is unsecured because Prudential Retirement considers the loan from the retirement account to be a secured debt. Resp. to Mot. to Dismiss ¶ 7.

8

A debtor may deduct from current monthly income "monthly payments on account of secured debts." *See* 11 U.S.C. § 707(b)(2)(A)(iii). Under the Bankruptcy Code, a 401(k) loan is not a secured debt; 401(k) loan payments are not "secured debt monthly payments" dealt with under section 707(b)(2). *See, e.g.*, *Egebjerg v. Anderson (In re Egebjerg)*, 574 F.3d 1045, 1049 (9th Cir. 2009) ("We join the vast majority of courts in holding that the debtor's obligation to repay a loan from his or her retirement account is not a 'debt' under the Bankruptcy Code."); *McVay v. Otero*, 371 B.R. 190, 205 (W.D. Tex. 2007) ("11 U.S.C. § 707(b)(2)(A)(iii) does not allow the [debtors] to deduct their monthly repayments on their retirement plan loans as 'payments on account of secured debts,' as their loans do not constitute 'debts' under the Bankruptcy Code.").

The Court therefore will remove the monthly payment on the 401(k) loan, thus increasing the monthly disposable income on line 50 by $351.52 to $1,238.85.

   2. *The Debtors' Monthly Disposable Income Under Section 707(b)(2)*

Based on the numbers the debtors provided adjusted to exclude the deduction for the 401(k) loan repayment, the Court finds that the monthly disposable income under section 707(b)(2) that should have been reported on line 50 is $1,238.85. When that figure is multiplied by sixty, the product is $74,331 which exceeds the statutory threshold of $12,475. The presumption of abuse thus still remains and the debtors must demonstrate special circumstances to rebut this presumption.

B. <u>The Debtors Have Not Demonstrated Special Circumstances To Rebut the Presumption of Abuse</u>

Because there is a presumption of abuse, the debtors must demonstrate special circumstances that result in an adjusted disposable income that when multiplied by sixty produces a figure less than $12,475. *See* 11 U.S.C. § 707(b)(2)(B)(i), (iv). Stated otherwise, the

debtors must show special circumstances that result in an adjusted monthly disposable income of less than $207.92. *See id.* ($12,475 ÷ 60 ≈ $207.92). The debtors have listed what they believe to be such special circumstances on line 56, including a "clunker" expense, 401(k) contributions, and an income reduction due to loss of health savings account reimbursement.

### 1. *The "Clunker" Expense*

The debtors list on line 56 a monthly amount of $200 for a "clunker" expense. In the United States Trustee's motion to dismiss, she asserts that the debtors may be entitled to deduct $688 on line 22A, which is $200 more than the $488 that the debtors claimed on 22A. Mot. to Dismiss ¶¶ 11–12. The debtors admit this. Resp. to Mot. to Dismiss ¶ 2. It appears that this $200 entitlement is for the "clunker" expense. Because the parties agree and neither party has requested a ruling from the Court on this expense, the Court need not address its suitability. Furthermore, allowing this deduction without allowing the debtor's other special circumstance deductions will not render the monthly disposable income less than $207.92.[3]

### 2. *401(k) Contributions*

The debtors list monthly payments of $986.56 for 401(k) contributions in the additional expense category on line 56. The United States Trustee asserts that 401(k) contributions are not necessary for the health and welfare of the debtors or their dependents, are not allowable under 11 U.S.C. § 707(b)(2)(A)(ii)(I), and are not special circumstances within the meaning of 11 U.S.C. § 707(b)(2)(B). Mot. to Dismiss ¶¶ 27–29. To this contention, the debtors respond that

---

[3] The debtors report monthly disposable income on the B22A form of $887.33. The Court has adjusted this number to $1,238.85 by sustaining the United States Trustee's objection to the deduction for the 401(k) loan. Reducing this figure by $200 per month yields $1,038.85, which is $830.93 more than $207.92. The United States Trustee called into question the debtors' income as well as other deductions on the 22A form suggesting that the monthly disposable income should be even greater. Although the debtors contested some of the expenses, the debtors conceded that the income was at least what was reported on 22A and that the deductions up to line 50 of the form are correct. Using either the debtors' figures or the UST figures, the Court concludes the $200 "clunker expense" would not make a difference to the bottom line monthly disposable income and is insufficient to rebut the presumption in this case.

"the expenses described therein were included for the purposes of disclosure of expenses which would be allowable if this case were converted to a Chapter 13 proceeding." Resp. to Mot. to Dismiss ¶ 12. The debtors do not suggest, and do not demonstrate, that the 401(k) contributions are mandatory or necessary. Nor do they allege or show that they have no reasonable alternative. According to the debtors, their deduction for 401(k) contributions is appropriate because they should be able to deduct in a chapter 7 case what they could claim as a deduction in a chapter 13 case. To do so, the chapter 7 debtor would simply report these would-be amounts as a special circumstance deduction.

Voluntary 401(k) contributions are not special circumstances for the purpose of section 707(b)(2), because they are not unusual and there is a reasonable alternative of not making the voluntary contributions. *See In re Mravik*, 399 B.R. 202, 206 (Bankr. E.D. Wis. 2008) ("In this case, arguably the Debtor has a reasonable alternative in that she could stop or reduce the contributions to her retirement plan."). Whether the debtor may claim an expense deduction in a chapter 13 case does not alter the conclusion that 401(k) contributions do not qualify as special circumstances under section 707(b)(2). As such, the Court will not adjust the debtors' current monthly income by the voluntary 401(k) contributions.

### 3. *Income Reduction*

On the continuation sheet for line 56, the debtors assert an "Income reduction effective 01/01/15 - loss of HSA reim…" in the amount of $504.58. The United States Trustee asserts that Mr. Alther's pay advices for January, 15, 2015, January 30, 2015, and February 15, 2015, reflect that he received a small pay raise in 2015 and fail to reflect any alleged $504.58 loss of income or loss of HSA reimbursement. Mot. to Dismiss ¶ 32. The debtors admit these assertions and note that the adjustments were based on information and expectations available to Mr. Alther at

11

the time the debtors filed their chapter 7 petition. Resp. to Mot. to Dismiss ¶ 12. Because the parties agree that this is not based on fact, the Court will not adjust the monthly income based on the alleged income reduction. *See* 11 U.S.C. 727(b)(2)(B)(ii) (requiring the debtor to provide documentation and explanation of the asserted adjustment to income).

    *4. Disability Insurance, Health Insurance, Life Insurance Premium, and Health Savings Account Increases*

On the continuation sheet for line 56, the debtors assert their monthly payments for disability insurance will increase by $51.73, health insurance by $250.70, and life insurance premium by $45.94, all effective January 1, 2015. The debtors also list a $212.08 increase in their monthly payments to their health savings account. Even if the Court determined that these deductions were permissible as special circumstances, the current monthly income when multiplied by sixty would still exceed the statutory threshold;[4] therefore, the Court need not address each of these proposed deductions.

    *5. Dividend to Unsecured Creditors in Chapter 13 as a Special Circumstance*

The debtors argue that the Court should consider the dividend that would be paid to unsecured creditors in a chapter 13 case as a special circumstance to rebut the presumption of abuse. Tr. at 108:4–13; 112:14–22. In support of this argument, the debtors cited at hearing *In re Koonts*, an unpublished opinion issued by Judge Anderson, now retired, of this Court. In *Koonts*, Judge Anderson stated that "[t]his Court has generally held that a debtor must demonstrate the ability to pay unsecured creditors 20% before a chapter 13 plan could be confirmed." *In re Koonts*, No. 08-61880, slip op. at 9 (Bankr. W.D. Va. Jan. 12, 2010). He

---

[4]     $1238.85 (adjusted monthly disposable income) - $200 ("clunker" expenses) - $51.73 (disability insurance) - $250.70 (health insurance) - $45.94 (life insurance premium) - $212.08 (health savings account increase) = $478.40.  60 x $478.40 = $28,704, which exceeds $12,475.

12

continued that "[i]t is consistent to require, and this court has held, that it is not abuse under Section 707(b)(3) if a debtor cannot pay his or her unsecured creditors a 20% dividend." *Id.*

This Court holds that the dividend in chapter 13 is not a special circumstance or grounds to rebut the presumption of abuse under section 707(b)(2). Not only does the debtors' argument fail statutorily but also under the narrowed grounds of the holding in *Koonts*.

The Court in *Koonts* limited its holding by explicitly stating its conclusion applied to abuse under section 707(b)(3); that is, the *Koonts* court concluded that the amount of an unsecured dividend was relevant to whether the totality of the circumstances of the debtor's financial situation demonstrated abuse.

Section 707(b)(2)(B)(iv) requires that the presumption of abuse be rebutted by circumstances which lead to an adjustment in the current monthly income that when multiplied by sixty would produce a figure below the statutory threshold. The potential dividend to unsecured creditors to be paid pursuant to a chapter 13 plan has no effect on the amount of a debtor's current monthly income. Under a plain reading of section 707(b)(2)(B)(iv), therefore, a potential dividend is unable to serve as a circumstance to rebut the presumption of abuse. *See In re Smith*, 388 B.R. 885, 388 (Bankr. C.D. Ill. 2008) (lack of a meaningful payback in chapter 13 is not a defense to dismissal); *In re Johns*, 342 B.R. 626, 629 (Bankr. E.D. Okla. 2006) (the potential payback of zero percent dividend in chapter 13 is not a special circumstance to rebut the presumption of abuse); *In re Castle*, 362 B.R. 846, 852 (Bankr. N.D. Ohio 2006) (debtors' inability to fund chapter 13 plan is not an exception to the means test).

The United States Trustee moves to dismiss under section 707(b)(2). The Court declines to apply a defense which may be relevant under section 707(b)(3) as a defense to a motion to dismiss under the separate distinct Bankruptcy Code section 707(b)(2).[5]

## CONCLUSION

In this case, the debtors filed a Chapter 7 Statement of Current Monthly Income and Means-Test Calculation demonstrating the presumption of abuse arises under section 707(b)(2). The debtors alleged several purported special circumstances to adjust the current monthly income and rebut the presumption. The Court finds that the debtors failed to demonstrate special circumstances within the meaning of section 707(b)(2)(B)(i). Because the debtors have not rebutted the presumption of abuse, the Court grants the United States Trustee's motion.

Section 707(b)(1), however, accords a bankruptcy court the discretion to either dismiss the case or, if a debtor consents, to convert the case to one under chapter 11 or 13 of the Bankruptcy Code. The discretion under section 707(b)(1) is limited to ordering dismissal or permitting conversion. 11 U.S.C. § 707(b)(1); *In re Maura*, 491 B.R. 493, 516–18 (Bankr. E.D. Mich. 2013); *Justice v. Advanced Control Sols., Inc.*, Civ. No. 07-5231, 2008 WL 4368668, at *5 (W.D. Ark. Sept. 22, 2008).[6] Section 707(b)(1) restricts the bankruptcy court from permitting relief under chapter 7 when the court determines under section 707 that such relief is indeed an abuse. *See Maura*, 491 B.R. at 518 ("The Court simply cannot make such a finding and then leave a case to proceed in Chapter 7. That in itself would be an absurd result—finding an abuse

---

[5]  One critical distinction between Sections 707(b)(3) and 707(b)(2) is the presumption of abuse rendered from the objective means test. Under 707(b)(2) the abuse is presumed and may be rebutted by limited circumstances, but under 707(b)(3) the abuse is *not* presumed (or has been rebutted) and must be shown, if at all, through an analysis of both subjective and objective factors.

[6]  The court in *In re Siler*, 426 B.R. 167, 173, 177 (Bankr. W.D.N.C. 2010), held that section 707(b)(1) is mandatory yet concluded that application of the plain language led to an absurd result. This Court disagrees. If the means test under chapter 7 shows the presumption of abuse, and the debtor does not rebut the presumption, denying relief under chapter 7 to this debtor simply leaves the debtor to non-bankruptcy options or relief under other chapters.

but allowing the abuse to continue."). And so, the debtors will be given twenty-one days to file a motion to convert to chapter 13, or the case will be dismissed without further notice or hearing.

The Court will contemporaneously issue an order consistent with the findings and ruling of this opinion.

Date Entered: September 11, 2015

_____
Rebecca B. Connelly
United States Bankruptcy Judge